IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHAN STEWART,

        Plaintiff,

   v.

WAL-MART DISTRIBUTION CENTER
AND WAL-MART STORES, INC.,

        Defendants.

CIVIL ACTION
NO. 12-4958

**OPINION**

**Slomsky, J.**                                                                                       April 11, 2013

## I. INTRODUCTION

Before the Court is a Motion for Remand filed by Plaintiff Stephan Stewart. (Doc. No. 4.) On August 1, 2012, Plaintiff filed the Complaint against Wal-Mart Distribution Center[1] and Wal-Mart Stores, Inc. (collectively "Wal-Mart" or "Defendants") in the Court of Common Pleas of Philadelphia County. He claims that Wal-Mart employees were negligent and that, as a result, he sustained various personal injuries. (Doc. No. 1, Ex. A.) Defendants removed the case to this Court under diversity of citizenship jurisdiction because Plaintiff is a Pennsylvania resident, Wal-Mart is a Delaware corporation with its principal business office in Arkansas, and the amount in controversy exceeds $75,000. (Doc. No. 1.) In response, Plaintiff filed the Motion for Remand. (Doc. No. 4.)

Plaintiff now seeks to join two Wal-Mart managers as Defendants, both of whom are Pennsylvania residents. (Doc. No. 14 at 1-2.) Because Plaintiff is also a Pennsylvania resident,

---

[1] Wal-Mart Distribution Center is a fictitious name for a distribution center operated by Wal-Mart Stores East, L.P., organized under the laws of Delaware with a principal place of business in Arkansas. (Doc. No. 1 at 2.)

permitting joinder of the Wal-Mart managers as Defendants would destroy diversity of citizenship jurisdiction, thus divesting this Court of jurisdiction over the matter. The Motion for Remand is now ripe for adjudication.[2] For reasons that follow, the Court will grant the Motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In the Complaint, Plaintiff alleges that Wal-Mart engaged the services of Rehrig Penn Logistics, Inc. to supply, sort, clean, and distribute wooden pallets at its distribution center in Tobyhanna, Pennsylvania. (Doc. No. 1, Ex. A ¶ 9.) Plaintiff worked for Rehrig Penn Logistics at the distribution center as a pallet cleaner and sorter. (Id. ¶¶ 10-11.) On or about March 1, 2011, Plaintiff cut his knuckle while removing debris from inside a pallet at the distribution center. (Id. ¶ 13.) As a result, Plaintiff allegedly suffered various injuries. (Id. ¶ 31.)

On August 1, 2012, Plaintiff filed the Complaint in the Court of Common Pleas in Philadelphia County, alleging that negligence caused his personal injuries. (Doc. No. 1, Ex. A.) Plaintiff claims that Wal-Mart knew or should have known about the unreasonably dangerous condition of the pallets at the distribution center. (Id. ¶ 15.) On August 29, 2012, Defendants removed the case to this Court under diversity of citizenship jurisdiction. (Doc. No. 1.) On September 6, 2012, Plaintiff filed the Motion for Remand. (Doc. No. 4.)

After filing the Motion for Remand, Plaintiff discovered that two Wal-Mart managers, Chris Cherry ("Cherry") and Ed Geisler ("Geisler"), may be responsible for his injuries. (Doc. No. 14 at 3.) On November 9, 2012, Plaintiff filed a supplemental brief in support of the Motion to Remand seeking to join these individuals as Defendants. (Id.) Plaintiff attached a proposed Amended Complaint to the supplemental brief. (Id., Ex. A.) The Amended Complaint alleges

---

[2] In rendering this Opinion, the Court has considered: the Motion for Remand (Doc. No. 4), the Response of Defendants in Opposition (Doc. No. 5), the supplemental briefs of Plaintiff (Doc. Nos. 14, 17, 19) and Defendants (Doc. Nos. 15, 18), and the arguments of counsel at a hearing held on November 2, 2012.

that when Plaintiff was injured, Cherry was an operations manager and Geisler was an asset protection manager at the Wal-Mart distribution center. (Id. ¶¶ 10-11.) Plaintiff submits that both individuals "bore direct and daily responsibility for overseeing the conditions of the pallets and distribution center." The Amended Complaint asserts Cherry and Geisler were negligent because they knew or should have known that the distribution center was, and remained, in an unreasonably unsafe and unsanitary condition. (Id. ¶¶ 13, 46.) The Amended Complaint also avers that Cherry and Geisler are both Pennsylvania residents. (Id. ¶¶ 4, 5.)

### III. STANDARD OF REVIEW

28 U.S.C. § 1447(e) sets forth the controlling law when a plaintiff seeks to join additional non-diverse defendants after a case is removed from state court. The statute provides: "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "Based on both the plain meaning and legislative history, cases from this District interpret Section 1447(e) as granting **substantial discretion** in whether to permit joinder to the courts." Doe No. 4 v. Soc'y for Creative Anachronism, Inc., Nos. 07-1439 & 07-1440, 2007 WL 2155553, at *3 (E.D. Pa. July 25, 2007) (citations omitted) (emphasis added).

While the Third Circuit has not designated factors a court must consider under 28 U.S.C. § 1447(e), district courts in the Third Circuit have looked for guidance to the analysis of the Fifth Circuit in Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987).[3] "[T]he Fifth Circuit

---

[3] See Cnty. of Northampton v. RAM Const. Servs. of Cleveland, LLC, No. 12-5958, 2013 WL 878887, at *3 (E.D. Pa. Mar. 11, 2013). See also Doe No. 4, 2007 WL 2155553, at *3; Marker v. Chesapeake Life Ins. Co., No. 10-729, 2011 WL 2670004, at *2-3 (E.D. Pa. July 6, 2011); Grafstrom v. Chiquita Brands Intern., Inc., No. 11-387, 2011 WL 1475492, at *1 (E.D. Pa. April

has endorsed a flexible and equitable approach, which 'balance[s] the defendant's interests in maintaining a federal forum with the competing interests of not having parallel lawsuits.'" Doe No. 4, 2007 WL 2155553, at *3 (quoting Hensgens, 833 F.2d at 1182).

Under Hensgens, when a court is faced with an amended pleading naming new non-diverse defendants in a removed case, it "should scrutinize that amendment more closely than an ordinary amendment." Hensgens, 833 F.2d at 1182.  In doing so, the Court should consider a number of factors "to balance the Defendant's interest in maintaining the federal forum with the competing interests of not having parallel suits." Id.  These factors are: 1) "the extent to which the purpose of the amendment is to defeat federal jurisdiction;" 2) "whether Plaintiff has been dilatory in asking for amendment;" 3) "whether Plaintiff will be significantly injured if amendment is not allowed;" and 4) "any other factors bearing on the equities." Id.  If this Court permits joinder of the two non-diverse Defendants, Cherry and Geisler, remand of the case to state court is warranted.  If joinder is not allowed, then this Court will retain jurisdiction over the matter.

IV.     ANALYSIS

    A.     **The Primary Purpose Of Plaintiff In Seeking Joinder Is Not To Defeat Diversity Jurisdiction**

Adhering to the Hensgens approach, this Court will first consider the extent to which Plaintiff seeks joinder in an effort to defeat diversity jurisdiction.  Hensgens, 833 F.2d at 1182. Generally, this factor turns on whether the plaintiff was aware of the non-diverse defendants at the time the complaint was filed in state court.  Montalvo, 2010 WL 3928536, at *3.  Thus, "[w]hen a plaintiff knows about the non-diverse defendant's activities at the time the complaint

---

13, 2011); Montalvo v. John Doe I, No. 10-2617,  2010 WL 3928536, at *3-5 (E.D. Pa. Oct. 5, 2010).

was originally filed but does not include that person as a party, subsequent attempts to join that person as a party will be viewed as an attempt to destroy diversity." Id. For example, in Doe No. 4, the court denied a motion to remand after determining that the primary purpose of requesting joinder was to destroy diversity. 2007 WL 2155553, at *4. In making this determination, the court noted that the plaintiffs were aware of the alleged involvement of the defendant for several years, could have easily located the defendant, and did not provide a valid reason for not initially naming the defendant in the complaint. Id.

In Estate of Horvath v. Ciocca, however, a court in this District found that the plaintiffs did not seek joinder in order to defeat diversity and granted a motion to remand the case to state court. No. 07-2685, 2008 WL 938927, at *4 (E.D. Pa. April 4, 2008). The plaintiffs in Estate of Horvath did not assert that they were unaware of the existence of the proposed defendant when they initially filed the complaint. Rather, the plaintiffs represented that at the time they filed the complaint, they were unaware of the extent of the involvement of the new defendant in the alleged wrongdoing. Id.

Here, Plaintiff similarly submits that he "does not seek to join these defendants solely to destroy diversity but rather to assert meritorious causes of action against potential culpable parties." (Doc. No. 14 at 4.) Plaintiff does not allege that he was unaware of the existence of Cherry and Geisler when he filed the Complaint. Instead, like the plaintiffs in Estate of Horvath, Plaintiff contends that he was not aware of the role Cherry and Geisler played in the alleged wrongdoing at the time the Complaint was filed. It was not until after filing the Motion for Remand that Plaintiff "learned of additional parties, both Pennsylvania residents, who may be responsible for his injuries." (Id. at 3.) Under this circumstance, Plaintiff's primary purpose in seeking joinder is not to destroy diversity jurisdiction.

### B. Plaintiff Was Not Dilatory In Moving For Joinder

The second <u>Hensgens</u> factor for this Court to consider is whether Plaintiff was dilatory in seeking joinder. <u>Hensgens</u>, 833 F.2d at 1182. In <u>Doe No. 4</u>, the court found that the plaintiffs were dilatory for seeking joinder over four months after instituting the action in state court. 2007 WL 2155553, at *5. In <u>Montalvo</u>, however, the court found that a three-month hiatus between the filing of the complaint in state court and the motion to amend the complaint to name additional defendants was not dilatory. 2010 WL 3928536, at *4.

In this case, Plaintiff filed the Complaint in state court on August 1, 2012. After the case was removed to this Court, Plaintiff filed the Motion for Remand on September 6, 2012. On November 9, 2012, Plaintiff sought to join Cherry and Geisler as Defendants. Thus, approximately three months lapsed between the time the Complaint was filed and the time Plaintiff moved to join Cherry and Geisler. This time frame is similar to the amount of time which elapsed in <u>Montalvo</u>. Thus, Plaintiff was not dilatory in seeking to amend the Complaint and name the additional two Defendants.

### C. Plaintiff Will Be Significantly Prejudiced If Joinder Is Denied

The third <u>Hensgens</u> factor is whether Plaintiff will be significantly prejudiced if joinder is not permitted. <u>Hensgens</u>, 833 F.2d at 1182. Plaintiff here will be significantly prejudiced if joinder is not permitted because his counsel would be required to do duplicative work. Specifically, Plaintiff would be required to bring a separate state court action to pursue his claims against the two new Defendants. In both a state and federal action, the facts and issues appear to be identical, and it would be burdensome to pursue both cases at the same time. This burden on Plaintiff will be significant and prejudicial if joinder is not permitted.

### D. Consideration Of Other Factors Tips The Balance Of Equities In Favor Of Plaintiff

Finally, in deciding whether joinder should be permitted, the Court may consider any other factor bearing on the equities of this case. Hensgens, 833 F.2d at 1182. Here, an additional factor is the "general presumption in favor of state jurisdiction." See Estate of Horvath, 2008 WL 938927, at *6 (remanding a case to state court when the addition of new defendants destroyed diversity of citizenship jurisdiction and the underlying causes of action involved matters of state law). While the Third Circuit has not specifically interpreted the presumption in favor of state jurisdiction in the context of § 1447(e), the court has stated that "removal statutes are generally 'to be strictly construed against removal and all doubts should be resolved in favor of remand.'" Id. (quoting Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)). Further, under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Thus, the presumption of state jurisdiction in this case weighs in favor of granting the instant Motion for Remand.

### V. CONCLUSION

Applying the Hensgens factors here, the Court finds that the factors weigh in favor of allowing the amendment of the Complaint and remanding this case to state court. See Cnty. of Northampton, 2013 WL 878887, at *3. The Court will therefore permit Plaintiff to amend the Complaint and will grant the Motion for Remand.